## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Cristian J. Otero-Robles, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.    I am a Special Agent employed by the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and have been employed as a Special Agent since January 2023. I am an investigative or law enforcement officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. As a Special Agent, my responsibilities include conducting investigations of the alleged manufacture, distribution and possession of controlled substances, importation of controlled substances, smuggling of goods into the United States, firearm's violations, and other related offenses.

2.    I have successfully completed the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center in Glynco, Georgia. I also graduated from the Homeland Security Investigations Special Agent Training (HSISAT). During HSISAT, I received extensive training conducting investigations related to firearms violations and narcotics smuggling, which includes interdiction and distribution activities where investigations commonly conducted are related to violations of Titles 8, 18, 19, 21 and 31 of the United States Code (USC).

3.    Your affiant is presently assigned to Homeland Security Investigations (HSI), San Juan, Airport Investigations and Tactical Team (AirTAT). The AirTAT investigates international drug trafficking and money laundering organizations that utilize the aviation domain to smuggle narcotics and currency into and through the United States.

4.    As a Special Agent, your affiant's job and responsibilities include conducting investigations of alleged manufacturing, distributing or possession of controlled substances, 21 U.S.C. § 841 (a) (1)); importation of controlled substances 21 U.S.C § 952 (a)); smuggling of

goods into the United States, 21 U.S.C. § 545; Immigration violations Title 8, United States Code; possession with the intent to distribute narcotic drug controlled substances while onboard a vessel subject to the jurisdiction of the United States 46 U.S.C. § 70501 et seq.; and related offenses

5. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is not intended to include every fact observed by me or known by the government.

6. Specifically, this affidavit is submitted for the limited purpose of establishing probable cause that **Zaydee MORALES-Lopez committed violations of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(ii) (possession with intent to distribute a mixture or substance containing five kilograms or more of cocaine).** Therefore, it does not contain each and every fact known to me or other law enforcement agents concerning this investigation.

### Facts in Support of Probable Cause

7. On September 16, 2025, at approximately 11:15 PM, Homeland Security Investigations (HSI), Airport Investigations and Tactical Team (AirTAT) Task Force Officers (TFOs) were conducting Domestic Flight Operations at the Luis Muñoz Marin International Airport (LMMIA). Puerto Rico Police Bureau (PRPB) K9 Officer G. Rivera (Badge # 33578) and K9 Dora were assisting HSI TFOs.

8. HSI TFOs received information regarding a female, later identified as Zaydee MORALES-Lopez, arriving to LMMIA at approximately 11:50 PM. Video footage analysis revealed MORALES-Lopez entering through the JetBlue terminal door of LMMIA and proceeding directly to the United Airlines self-service kiosks, avoiding passing through the United States Department of Agriculture (USDA) which is required when departing from Puerto Rico on a

domestic flight into the Continental United States (CONUS). check point entering through JetBlue terminal door of LMMIA. Based on training and experience, this is a modus operand often used by drug trafficking organizations when attempting to transport controlled substances through the airport.

9. MORALES-Lopez was scheduled to travel scheduled to travel in United Airlines flight number 2219 with a destination of Newark International Airport (EWR), Newark, New Jersey (NJ). MORALES-Lopez was carrying two small backpacks and two green in color check-in type suitcases.

10. HSI TFOs located MORALES-Lopez suitcases in the loading ramp area and coordinated a K9 open air odor test on the two green check-in type suitcases.

11. At approximately 1:10 AM on September 17, 2025, K9 Dora alerted positive to the presence of narcotics inside two check-in type green suitcases, bearing a United Airlines tag reflecting the flight number "UA2219" and the destination of EWR, Newark, NJ. The United Airlines tag also reflected the name of "MORALESLOPEZ."

12. HSI TFOs then secured both check-in type green suitcases and brought it to LMMIA gate B4 where MORALES-Lopez was located.

13. HSI TFOs approached MORALES-Lopez at gate B4 and identified themselves as law enforcement officers. HSI TFOs then asked MORALES-Lopez if she could provide a identification and boarding pass, MORALES-Lopez provided her identification card and informed HSI TFOs that her boarding was digitally on her cellphone and provided her baggage claim receipt. HSI TFOs matched the name and number on the baggage claim receipt for both suitcases and asked MORALES-Lopez if she had prepared the suitcases herself; she replied no. HSI TFOs then asked for consent to open her suitcases and MORALES-Lopez verbally and voluntarily consented. HSI

TFOs asked MORALES-Lopez to open the suitcases herself, MORALES-Lopez then proceeded to attempt to open the suitcases but was unable to since she did not know the code to the lock on the suitcases. HSI TFOs then asked MORALES-Lopez if they could attempt to open the suitcases; she replied yes. HSI TFOs then proceeded to input the default code for most suitcases "000" and opened the locking mechanism of the suitcases.

14. HSI TFOs then asked MORALES-Lopez to unzip the suitcases herself. Upon MORALES-Lopez opening the suitcase, HSI TFOs observed several large brick shaped objects wrapped in clear plastic film concealed within the bed linen inside the suitcase. Based on my training and experience, the packaging was consistent with unlawfully concealed controlled substances.

15. MORALES-Lopez was then detained and escorted along with the suitcases to the AirTAT facilities located at LMMIA.

16. At approximately 1:37:AM AM, MORALES-Lopez signed a written consent for the inspection of both suitcases, both backpacks and her electronic device for which she also provided the passcode.

17. HSI Special Agent (SAs) and TFOs then proceeded to conduct a full inspection of the first green suitcase. Upon opening the green suitcase, HSI SAs and TFOs observed several pieces of bed linen concealing three large brick shaped objects. HSI SAs and TFOs then carefully opened the three large brick shaped objects revealing it to have a total of 6 bricks shaped objects wrapped in clear plastic film. The 6 brick shaped objects weighted approximately 6.13 kilograms. Based on my training and experience, the packaging and appearance were consistent with kilogram quantities of unlawfully concealed controlled substances.

18. A full inspection of the second suitcase revealed it to also contain three large brick

shaped objects wrapped in clear plastic film. Upon opening the three large brick shaped objects, revealed them to have a total of 6 brick shaped objects wrapped in clear plastic film. The 6 brick shaped objects weighted approximately 6.23 kilograms. Based on my training and experience, the packaging and appearance were consistent with kilogram quantities of unlawfully concealed controlled substances.

19. A chemical identification analysis was conducted on one brick shaped object from each suitcase. The analysis revealed the brick shaped objects to contain cocaine hydrochloride. The combined total weight of the seized cocaine was approximately 12.36 kilograms. Based on my training and experience, this quantity of narcotics is not for personal consumption but rather distribution purposes.

20. At approximately 3:10 AM, MORALES-Lopez was advised of her Miranda Rights in her native Spanish language which she knowingly and voluntarily waived by signing ICE Form 73-025.

21. During the interview, MORALES-Lopez stated she was offered 4,000 United States Dollars (USD) to conduct the venture. MORALES-Lopez further stated she knew she was transporting narcotics but was not aware of the quantity she was transporting. MORALES-Lopez stated she was told she would be transporting one brick.

22. Among the property on MORALES-Lopez person, HSI personnel seized one (1) cellular phone, 12.36kg of cocaine and the wrappings used in the preparation of the kilograms of cocaine.

**CONCLUSION**

23. Based on the foregoing facts and circumstances, your affiant submits that probable cause exists to believe that **Zaydee MORALES-Lopez** committed violations of **21 U.S.C. §**

841(a)(1) and 841(b)(1)(A)(ii) (possession with intent to distribute a mixture or substance containing 5 kilograms or more of cocaine).

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

_____
Cristian J. Otero
Special Agent
Homeland Security Investigations
San Juan, Puerto Rico

Sworn and subscribed to me in accordance with the requirements of FRCP 4.1 this __17th__ day of September 2025, in San Juan, Puerto Rico at 2:12PM.

_____
Hon. Marshal D. Morgan
United States Magistrate Judge
District of Puerto Rico